(Superior Court of Cincinnati.)
General Term.

## HERMAN MERRELL v. ANNA M. McMAHON.

M., an attorney, was employed by McM. as administratrix of her deceased husband's estate, to prosecute a claim against a railroad company for the wrongful death of the husband. The litigation was successful, and M. retained from the sum thus derived a sum which McM. claims was excessive, and a part of which she now sues to recover. The answer sets up the reasonableness of the charge, and that the services were procured and accepted by the plaintiff, both as beneficiary and administratrix, with full knowledge as to what the charge would be. To this answer a demurrer was sustained below.

Held—That McM. acted throughout in her capacity as beneficiary alone, and that the fund is chargeable with a reasonable compensation for its procurement.

WRIGHT, J.; Jackson, J., concurs; Hunt, J., dissents.

An action was commenced in the Superior Court of Cincinnati by Anna M. McMahon, as administratrix, the petition averring that she had by a certain Kentucky court been appointed and qualified as administratrix of the estate of Theodore F. McMahon, deceased; that for the prosecution of a statutory action for his wrongful death she had retained an attorney in the person of the then defendant, Herman Merrell, Esq.; that as such he had received from the tort feasor, a railroad company, in settlement of the claim, the sum of $4,500; that of this sum he had paid into her hand, $3,150, and had retained thereof, against her consent, $1,350, by way of compensation for his services; that the court of her appointment had allowed the defendant the sum of $900, in full compensation for his services, (this the answer denies). She prayed judgment for the balance, $450.

The defendant below, answering, admitted her authority, the receipt by him of $4,500 in settlement of the original claim, the payment to her of $3,150, the retention of $1,350, and denied the other allegations of the petition. By way of affirmative defense the answer proceeded and set forth a legislative enactment of the state of Indiana, (R. S., Ind., sec. 284), by virtue of which the claim arose. Defendant averred that he had instituted in a court of Indiana, and prosecuted to final judgment, an action against the railroad company; that the judgment was collected in full by him, producing the aforesaid sum of $4,500; that the action was strongly contested on the part of the railroad company; that he devoted much labor, care, diligence and time in its preparation and prosecution; that he commenced the action and performed the services "at the special instance and request of said Anna M. McMahon, made both personally, as one of the beneficiaries thereof, and as such administratrix; that said services were well and reasonably worth the sum of $1,350. * * *; that said Anna M. McMahon, both personally as one of the beneficiaries and as administratrix, procured and accepted the services * * * and received the fruits thereof, and did so with the full knowledge that the charges * * * for the same would amount to the sum so retained by him therefor;" that there are no beneficiaries entitled to share in the distribution of the fund produced, saving Anna M. McMahon herself and one other, to-wit, Ida McMahon, a daughter; that the action is brought by Anna M. McMahon in her capacity as administratrix for her own use and benefit, and that she is personally the real and sole party in interest; that she is not a resident of the state of Ohio, and has within this state no property subject to legal process; that the said sum of $4,500 so received by him was the direct result of his labor; that he has a lien upon the moiety still in his possession. He prayed to be dismissed and for all proper relief. A demurrer to the answer was sustained and judgment rendered on the pleadings in favor of the plaintiff below. The correctness of this ruling upon the demurrer is presented here for review.

The learned counsel for the administratrix, have engaged themselves in a very considerable argument upon the point of the power of an administratrix to bind by her contract the estate of the decedent. The negative of this proposition we take in general to be established; yet it is not known to us, how this question is made by the case at bar. The moneys here sought to be recovered, are not, and in no wise can become assets of the estate of the decedent; neither can it be maintained that Merrell is retaining assets of that estate.

The claim which brought forth the fund in controversy was purely statutory. The proceeds by law passing not at all into the estate of the decedent, but inuring to the exclusive benefit of the widow and children. The administratrix is trustee for them, not for the estate. Hicks v. Barrett, 40 Ala., 291; Perry, Admr., v. St. J. R. R. Co., 29 Kas., 420-422; Baker, Admr., v. R. R. Co., 91 N. C., 308; Ry. Co. v. Swayne, Admr., 26 Ind., 477; Johnson, Admr., v. Ry. Co., 7 Ohio St., 339; Woodward v. Ry. Co., 10 Ohio St., 123; Wolf v. R. R. Co. 55 Ohio St., 517; Sterl, Admr. v. Kurtz, 28 Ohio St., 191.

There can be said to be no such relationship between the statutory cause of action upon the one hand and the estate of the decedent upon the other hand, as would per se entitle the representative of the estate to be at all concerned as such in the litigation; the estate profits not at all, the representative as such has no interest. Perry, Admr. v. Ry. Co., 29 Kas., 422-423; Baker, Admr. v. Ry. Co., 91 N. C., 308.

For the mere purpose of accomodating a convenient and seasonable prosecution of the claim, the legislature has seen fit to denote the individual who happens to be concerned as representative of the decedent, as the individual most suitable according to propriety to be entrusted with the conduct of the litigation which inures to the benefit of widow, children, and next of kin. As their representative alone the trustee has an interest; as the representative of the estate, none. Wolf v. Ry. Co., 55 Ohio St., 517.

The capacity in which the administrator sues, is so sundered from all relationship to the estate, that it may in no wise be charged even with costs of the action in case it turn out to go against him. Hicks v. Barrett, 40 Ala., 291.

Indeed, in default of widow, children, and next of kin, the action may not stand at all. Ry. Co. v. Swayne, Admr., 26 Ind., 485; Lucus v. Ry. Co., 21 Barb., 245; Ry. Co., v. Norris et al, 26 Ill., 400; Cour. v. Ry., Co., 5 Gray, 473; Johnson, Admr. v. Ry., Co., 7 Ohio St., 336.

Therefore, the rights of the parties here may not be determined by considering that

estates are not liable to be bound by the contracts of administrators.

A great contention has been made about whether the trust fund can be charged with an attorney's lien for the value of services rendered in procuring the fund; it is urged that every lien grows out of contract (expressed or implied) and that inasmuch as the representative can make no contract which binds the fund, that therefore no lien can rise to charge it. This argument presents but scant attractiveness, for it seems to us that the lien of an artisan or an attorney is not dependent upon implied contract, but upon a right given by law to retain an article upon, or about which labor has been performed until payment is made for the trouble.

In cases where such liens have been asserted and maintained, it appears indeed to have been a characteristic almost universal that instead of impliedly assenting that the articles should be retained until payment made, the owner had designed, planned and undertaken to obtain possession without payment, and was disposed to make no payment whatsoever, if ever possession was once able to be obtained. Our minds would most willingly be led to the conclusion that a lien should be maintained at bar, but there seems to be that in the case which relieves it of this question.

The especial equities presented by the answer and the uncommon situation of the particular plaintiff below, are of an importance such as commands a main consideration.

The trust fund was acquired through Merrell's labor, and he has retained of it only the amount of a reasonable, a very reasonable compensation, if the allegations of the answer are to be taken as true.

The trustee now seeking to relieve Merrell of that which is confessedly his due, is herself a beneficiary first in size and importance.

As an individual, she is personally bound to respond to Merrell in the very sum of which as trustee she now seeks to divest him.

She is a non-resident of the state of Ohio, and although personally liable, has within it no property responsible to a judgment against her, none subject to legal process. This is strong matter in a court of equity. Field v. Wilbur, 49 Vt., 166.

The learned counsel by way of undertaking to distinguish in point of principle the case at bar from cases in the books, contend that the labors of Mr. Merrell added nothing to the value of the trust estate; this upon the sophism that the claim against the railroad company was as valid and as worthy prior to the expenditure of his efforts, as subsequent thereto. In this regard it occurs to us, that there seems to be extant amongst mankind a very general, almost an universal predilection to the proceeds of a claim over the claim itself; for this partiality we believe it not difficult to account, and to the general rule the plaintiff below appears to constitute no excep-

tion, her suit evidencing some preference for cash in hand over the possession of a mere claim. When Mr. Merrell's services were rendered there had come to the situation an element until then absent; precariousness had been translated into liquidation, speculation into reality, and by his labor. This makes for him an equity of which the conscience of a chancellor is unable to be rid; and howsoever profoundly and understandingly we contemplate the delusive uncertainties of "miserabiles personae," "ad usum Joannae" and "caveat advocatus," the fact persistently obtrudes itself, that Merrell's efforts got the fund.

It is urged that he can find no relief in equity, for the reason that his claim for services must fail in case he himself had instituted an action against the trustee; be this one way or the other, yet he was already in possession of his pay, and needed no relief if suffered to be let alone; but a "letting alone" was not to be; he, in possession of his due, is compelled into court as defendant; but it is into a court where no distinction in the administration of law or of equity is made, and where he may by statute set forth as many defenses as he has, whether they are legal, or equitable, or both. (R. S., sec. 5071.)

The very fact (if so it is) that he is without the remedy of an affirmative action, may supply the reason, and certainly inspires a willingness to maintain him in an equitable defense if it may with propriety be done.

Says Fonblanque, "Equity is more excellent than any human institution. Neither are positive laws, even in matters seemingly indifferent, any further binding than they are agreeable to the laws of God and Nature * *; yet, as the rules of municipal law are finite, and the subject of them infinite, there will often call out cases which can not be determined by them; for there can be no finite rule of an infinite matter perfect, so that there will be a necessity of having recourse to the natural principles; that what was wanting to the finite, may be supplied out of that which is infinite. * * * For, as the universal laws of nature would, in many instances, prove hurtful to particulars, if art were not to interpose and direct them aright, so the general precepts of the municipal law would often-times not be able to attain their end, if equity did not come in and aid them. And thus, in chancery, every particular case stands on its own particular circumstances; and although the common law will not decree against the general rule of law, yet chancery doth, so as the example introduce not a general mischief. Every matter, therefore, that happens inconsistent with the design of the legislator, or is contrary to natural justice, may find relief here; for no man can be obliged to anything contrary to the law of nature, and indeed no man in his senses can be presumed willing to oblige another to it." Whence comes the maxim, "Equity

COPYRIGHT, 1898, BY CARL G. JAHN.

will not suffer a right to be without a remedy." (Bisp. Eq., sec. 37).

This maxim has reference not to mere "moral" rights, but to those of a nature such as identifies them "legal" as distinguished from moral.

"Moral rights have, in general, but a subjective support; legal rights have the objective support of the physical force of the state. The whole purpose of laws is to announce in what cases that objective support will be granted and the manner in which it may be obtained. * * *. Every right, whether moral or legal, implies the active or passive furtherance by others of the wishes of the party having the right. * * *. When such furtherance is merely expected by the public opinion of the society in which they live, it is their "moral duty."

When it will be enforced by the power of the state, to which they are amenable, it is their "legal duty." (Holland, Juc., 75.)

An analysis of the nature of Mr. Merrell's right will determine it in either one or the other of these classes; whether it be not a mere "moral" but a "legal right," is to be known from the policy maintained by the state toward the enforcement of rights of a like nature; if it be "legal" the court should see to it that it is saved. The right grows out of a rendition of service of a kind for which payment is usually and commonly made, and for which payment is unhesitatingly enforced; that the services were valuable, and were advisedly sought and procured is conceded; that beneficiaries avail themselves of the advantage, and hasten to enjoy the fruits is plain enough.

It is the policy of the state to recognize this nature of rights, and to attend to their enforcement; and with especial rigor against those who voluntarily seek and enjoy the benefits wrought.

Upon this point of the "right" no successful contention can be made that it is not "legal," even as against the trustee; and this for considerations following. The original claim was statutory; legislatures seem to have regarded such claims as susceptible of liquidation only through litigation, for power and authority to litigate is in express terms granted; this grant of power carries along with it a legislative sanction of whatever expenses are reasonably necessary to the orderly execution of the power conferred; to successful litigation, counsel is not only proper but necessary; without aid from such, the trust would fall out to be practically inoperative, wherefore, the expense of counsel being requisite to the execution of the trust, the right of counsel to be paid is sanctioned by the policy of the law creating the trust, and is a right "legal" as distinguished from "moral."

This kind of right he is entitled to enforce and to protect by "equitable defenses," if he has such. The question, whether defenses which are safely "equitable" when set against the claims of individuals, lose their equitable character if opposed to the claim of a trustee, may not be settled by general considerations. This must depend upon the nature and object of the trust and the interest of the person concerned as trustee, whether that interest is of a representative, or of a personal nature, as well as upon some other considerations. By the pleadings it is shown, that the nature of the trust at bar has a great freedom from complications; all beneficiaries are now already ascertained and their identity known with certainty; in number they are but two; of the two, one is herself trustee; the trustee is obliged to no duty of distributing the trust funds amongst a class of claims unascertained in number and indefinite in sum as those of creditors. In short, no administration is to be made upon the fund by the trustee, naught but a plain and simple paying over of one part and a retention in personal ownership of the other part; as trustee the claimant has but a bare and naked legal title, as beneficiary she has a clear proprietary interest and ownership. 91 N. C., 308, supra. She who is parading as trustee is such only in name, and in fact is herself liable to repay to Mr. Merrell the same sum which as trustee she seeks now to have from him; her distributive share of the total fund is more than ample to meet her individual obligation to him; to the extent of the amount of her share, her title as trustee is extinguished by merger in her right as individual the moment she receives the fund or part of it into her possession; she has already received more than the share of her co-beneficiary, and presumably has accounted therefor; if not, she has received sufficient to enable her to account when called upon; therefore, the balance sought by her as trustee from Merrell, would, upon the instant of its receipt into her hand, lose its trust character, and she her trust title; she would then possess it not as trustee, but as proprietress, the trust title being gone by merger. Blood v. Kane, 130 N. Y., 518. It is out of harmony with right and justice, that individuals shall be suffered to array themselves in habiliments of trust authority happening at hand, and thus self-sanctified with these insignia of immunity and privilege seek judicial tribunals for the accommodation of individual advantage and personal exultation; aid of this shall come but slowly from a court of equity, a court of power to attend to equitable defenses; if as trustee they come in, the shell of trust authority may not serve to screen from recognition the personage who stands behind and suffer them unchallenged to depart self aggrandized, bearing away as fruit of such litigation that to which others possess a higher and a better right.

Her personal liability to Merrell is clearly shown. That no other beneficiary can suffer detriment from the retention by Merrell of his just pay, is well established, for already she has sufficient to respond thereto in full. The payment by Merrell of the balance to her as trustee, and the re-payment of it to him by her, as an individual, whether by

legal process or otherwise, we regard as an useless and an idle ceremony. McNeill v. Hodges, 83 N. C., 511.

The answer set forth an equitable defense, and the demurrer should have been overruled. Feldhaus v. Gibson, 4 Ired. Eq., 455-460; Davis, Rec., v. Stover, 58 N. Y., 473.

The cases of Kittredge v. Miller, 19 W. L.B., 19, and Thomas, Adm'r. v. Moore, 52 Ohio St , —, are not helpful to the point at bar, for the reason that there the trustee was concerned in a trust capacity alone, representing creditors unascertained in number, claims uncertain in amount, and did not appear to be the certain and perhaps only beneficiary of the judgment sought; neither was it undertaken in those cases to make out against the trustee any case in equity.

Further, there the claimants were plaintiffs and not already in possession of the fund claimed. The judgment must be reversed and the cause remanded for such proceedings as are proper to determine the reasonableness of Mr. Merrell's charges.

J. L. Logan and Harrison & Aston, for plaintiff in error.

Frank B. Finney and W. A. Hicks, for defendant in error.